IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER BARBOUR, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v.   ) | CIVIL CASE NO. 2:01-cv-612-ECM |
| ) | (WO) |
| JOHN HAMM, Commissioner, ) | |
| Alabama Department of Corrections, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

Earlier this year, the Court granted several requests by both parties to conduct discovery on Petitioner Christopher Barbour's ("Barbour") claim of actual innocence.[1] (*See* docs. 230, 236, 252, 261, & 278). Then, the Supreme Court decided *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022), and *Shoop v. Twyford*, 142 S. Ct. 2037 (2022). Relying primarily on those cases, Respondent John Hamm (the "State") now asks the Court to reconsider its March 7, 2022 grant of additional discovery.[2] (Doc. 284). Because the Court finds that neither *Shinn* nor *Shoop* affects its prior discovery order, and because the Court sees no other reason to reconsider the order, the State's motion is due to be denied.

---

[1] As explained further below, Barbour's assertion of actual innocence, as it pertains to the discovery order, is not a "claim" for purposes of 28 U.S.C. § 2254; rather, it is "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993).

[2] The State previously asked the Court to reconsider the discovery order on different grounds, which the Court declined to do. (*See* doc. 270).

## II. ANALYSIS

The discovery order the State asks the Court to reconsider is an interlocutory—*i.e.*, nonfinal—order. The Court has "plenary power" over its interlocutory orders, and its power to "reconsider, revise, alter or amend [an] interlocutory order is not subject to the limitations of [Federal] Rule [of Civil Procedure] 59." *Gallimore v. Mo. Pac. R.R. Co.*, 635 F.2d 1165, 1171 (5th Cir. 1981) (citation omitted);[3] *see also Hardin v. Hayes*, 52 F.3d 934, 938 (11th Cir. 1995) (per curiam) (explaining that the district court may reconsider, revise, alter, or amend an interlocutory order at any time prior to final judgment (citing *Gallimore*, 635 F.2d at 1171)).[4] Moreover, the Court may modify its interlocutory orders without regard to the restrictions of Rule 60. *See* FED. R. CIV. P. 60(b) advisory committee's note to 1946 amendment (explaining that interlocutory orders are "not brought within the restrictions" of Rule 60 and instead are "subject to the complete power of the court rendering them to afford such relief from them as justice requires").

The State argues that two intervening Supreme Court decisions render this Court's prior discovery order legally untenable. According to the State, these decisions underscore that (1) the Court cannot allow factfinding beyond the state court record on Barbour's

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[4] Thus, the standard applicable to a motion to reconsider a final judgment under Rule 59(e), which requires newly discovered evidence, a manifest error of law or fact, or an intervening change in controlling law, does not apply here. *See Samara v. Taylor*, 38 F.4th 141, 149 (11th Cir. 2022) (explaining the standard for Rule 59(e) motions); *Giles v. Winn-Dixie Montgomery, LLC*, 574 F. App'x 892, 895 (11th Cir. 2014) (per curiam) (same); *see also Automotive Alignment & Body Serv. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 721 (11th Cir. 2020) (explaining that Rules 59 and 60 provide "two ways to disturb a final judgment").

actual innocence claim under *Schlup v. Delo*, 513 U.S. 298 (1995), and (2) the Court must determine whether Barbour satisfies the requirements of both 28 U.S.C. § 2254(d) and § 2254(e) before the Court may "develop[] further factfinding beyond the state court record" concerning Barbour's underlying claim concerning his allegedly coerced confession. (Doc. 284 at 7). The State also argues that certain evidence this Court relied upon to justify and issue the discovery order has been rendered unreliable upon further discovery. Either reason, says the State, is enough for this Court to reconsider its previous order and bar the parties from conducting further discovery. Barbour disagrees on both fronts.

And Barbour is correct. To start, neither *Shinn* nor *Shoop* bears on the issue here.

First, *Shinn*. The State argues that *Shinn* held that federal courts may not order the expansion of the record and consider new evidence under the guise of determining whether a petitioner met his threshold burden to overcome a procedural bar. (*See id.* at 3). But that is not what *Shinn* held. First, some background: In *Martinez v. Ryan*, the Supreme Court held that a federal habeas petitioner's ineffective assistance of counsel in state *collateral* proceedings may excuse the petitioner's failure to bring his ineffective assistance of *trial* counsel claim in the collateral proceedings, in circumstances where the state collateral proceedings provide the first opportunity to raise an ineffective assistance of trial counsel claim. 566 U.S. 1, 9 (2012). *Shinn* addressed the following question: if the habeas petitioner's ineffective counsel in the state collateral proceedings excuses the failure to

3

*bring* the ineffective trial counsel claim, does it also excuse the petitioner's failure to *develop the record* on that claim?

It does not. *See Shinn*, 142 S. Ct. at 1734. Even if a petitioner suffered the ineffective assistance of state postconviction counsel, and thus was unable to develop the state court record on a claim of ineffective assistance of *trial* counsel, a federal habeas court is nevertheless barred from "conduct[ing] an evidentiary hearing or otherwise consider[ing] evidence beyond the state-court record" to review that claim even if the failure to *bring* the claim is excused. *Id.* Because there is no constitutional right to postconviction counsel, "a state prisoner is responsible for counsel's negligent failure to develop the state postconviction record." *Id.* at 1735. So, even though a petitioner "often need[s] 'evidence outside the trial record' to support [his] trial-ineffective-assistance claims," *id.* at 1737 (citation omitted), he cannot develop that evidence in federal court if his postconviction counsel did not do so in the state court. Indeed, "when a federal habeas court convenes an evidentiary hearing for any purpose, or otherwise admits or reviews new evidence for any purpose, it may not consider that evidence on the *merits* of a negligent prisoner's *defaulted claim* unless the exceptions in § 2254(e)(2) are satisfied." *Id.* at 1738 (emphases added). Thus, the upshot of *Shinn* is that a federal habeas petitioner can *bring* an otherwise-defaulted ineffective assistance of trial counsel claim in federal court, but he cannot *develop evidence* in support of that claim.

*Shinn* did not address the issue the Court faces here. Here, the Court allowed discovery on the issue of Barbour's claim of actual innocence under *Schlup* pursuant to the

"good cause" standard articulated by the Supreme Court in *Bracy v. Gramley*, 520 U.S. 899 (1997). *Shinn* did not address the propriety of discovery in federal habeas proceedings or the proper procedure for handling a claim of actual innocence under *Schlup* and its progeny. Instead, *Shinn* addressed a state prisoner's failure to develop the state court record on an *underlying constitutional claim* (ineffective assistance of trial counsel) and the prisoner's request for an evidentiary hearing in federal court to do so. Moreover, *Shinn* involved the interplay between § 2254(e)(2), the unique procedure employed in several states for raising ineffective assistance of trial counsel claims, and a *different* way to overcome procedural default than the one at issue here. *Shinn* descends from a line of cases holding that a court may excuse a procedural default if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).[5] If a petitioner cannot demonstrate such cause and prejudice, he "may obtain review of his constitutional claims only if he falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup*, 513 U.S. at 314–15 (alteration in original) (citation omitted). Thus, a petitioner

---

[5] In *Murray v. Carrier*, the Supreme Court concluded that while "attorney error" is not "cause" to excuse a procedural default, a constitutionally ineffective attorney *is* such cause. 477 U.S. 478, 488 (1986). However, ineffective counsel may establish cause for a procedural default only if the United States Constitution guaranteed an attorney at the proceeding in question. *See Coleman*, 501 U.S. at 755. If it did not (for example, at a state collateral proceeding, where an attorney is not constitutionally guaranteed), attorney error does not supply cause for a default. *See Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017). That rule too has an exception: if a state collateral proceeding is the first place to raise a claim (per applicable state law), then a constitutionally ineffective attorney at the *collateral* proceeding can constitute cause to excuse a default (even if the Constitution does not require an attorney at that proceeding). *Martinez*, 566 U.S. at 9. Thus, *Shinn* is another step along this road, addressing the interplay between *Martinez* and § 2254(e)(2).

5

may avail himself of the miscarriage of justice exception even if he cannot demonstrate cause and prejudice to excuse a procedural default. Barbour's "claim of innocence is offered only to bring him within this 'narrow class of cases.'" *See id.* (citation omitted). "The miscarriage of justice exception . . . survived AEDPA's passage." *McQuiggin v. Perkins*, 569 U.S. 383, 393 (2013). Thus, *Shinn* does not impact the Court's discovery order here.

Nor does *Shoop*. *Shoop* involved the legality of an order issued under the All Writs Act, which empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law," 28 U.S.C. § 1651(a). The district court had ordered Ohio "to transport a prisoner in its custody to a hospital for medical testing," which the prisoner argued could "reveal evidence helpful in his effort to obtain habeas corpus relief." *Shoop*, 142 S. Ct. at 2041. The court issued this order without determining that it could consider the evidence the prisoner sought. *Id.* at 2042.

The Supreme Court held that the district court could not do the former without the latter. *Id.* at 2046. The transport order was not "'necessary or appropriate in aid of' a federal court's adjudication of a habeas corpus action when the prisoner has not shown that the desired evidence would be admissible [under § 2254(e)(2)] in connection with a particular claim for relief." *Id.* (citation omitted) (explaining that the petitioner "never explained how the results of the neurological testing could be admissible in his habeas proceeding" (emphasis omitted)). Thus, before a court may issue such an order under the

6

All Writs Act, the court must first satisfy itself that the evidence sought is admissible under § 2254(e)(2).

Like *Shinn*, *Shoop* did not address the propriety of discovery in federal habeas proceedings or the proper procedure for handling a claim of actual innocence under *Schlup* and its progeny. As this Court's discovery order recognizes, Barbour sought, and was ultimately granted, discovery to further his *Schlup* actual innocence claim. (Doc. 230 at 10). In contrast to *Shoop*, the discovery allowed here is likely to turn up evidence that is not only admissible but which the Court must consider in evaluating Barbour's actual innocence claim. *See Schlup*, 513 U.S. at 324, 329, 331–32 (explaining that the habeas petitioner must present "*new* reliable evidence . . . that *was not presented at trial*," that the petitioner must show that "in light of the *new* evidence, . . . no reasonable juror would have found the defendant guilty," that "a reasonable juror would consider fairly *all of the evidence* presented," and that the district court "must assess the probative force of the *newly presented* evidence in connection with the evidence of guilt adduced at trial" (emphases added)); *House v. Bell*, 547 U.S. 518, 537 (2006) ("*Schlup* makes plain that the habeas court must consider 'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" (citation and internal quotation marks omitted)); *id.* at 539 ("[T]he *Schlup* inquiry, we repeat, requires a holistic judgment about '*all* the evidence' and its likely effect on reasonable jurors applying the reasonable-doubt standard." (emphasis added) (citation

and internal quotation marks omitted)). Thus, the Court is not persuaded that *Shoop* undermines the propriety of the discovery order here.

Contrary to the State's assertion, the Court is not limited to the state court record in determining whether Barbour has demonstrated actual innocence under *Schlup*, and § 2254(e)(2) imposes no bar to discovery on the *Schlup* question. *Schlup* makes clear that a successful actual innocence claim requires new reliable evidence *that was not presented at trial*. 513 U.S. at 324. *House* reiterated that "the habeas court must consider 'all the evidence,' old and new." 547 U.S. at 537 (citation omitted). Section 2254(e)(2) does impose certain conditions on the federal habeas court's ability to hold an evidentiary hearing on a "claim" if the petitioner "has failed to develop the factual basis of [the] claim in State court proceedings." 28 U.S.C. § 2254(e)(2). But Barbour's assertion of actual innocence under *Schlup* and its progeny is not a "claim" for purposes of § 2254; rather, it is "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera*, 506 U.S. at 404; *see also Schlup*, 513 U.S. at 314–16. It therefore falls outside of § 2254(e)(2)'s ambit. *See House*, 547 U.S. at 539 (explaining that § 2254(e)(2) does not address "the type of petition at issue here—a first federal habeas petition seeking consideration of defaulted claims based on a showing of actual innocence" and so its "standard of review . . . is inapplicable"); *see also Sibley v. Culliver*, 377 F.3d 1196, 1207 n.9 (11th Cir. 2004) (explaining that an actual innocence allegation is not a "claim" as referred to in § 2254(e)(2) and thus the provision does not "govern[] the availability of evidentiary hearings when petitioners seek to introduce

8

evidence concerning actual innocence"); *Fontenot v. Crow*, 4 F.4th 982, 1029–30 (10th Cir. 2021).

As the State has conceded, neither *Shinn* nor *Shoop* overruled *Schlup* or its progeny concerning gateway claims of actual innocence. (Doc. 294 at 8:13–15). Additionally, neither *Shinn* nor *Shoop* overruled *Bracy* concerning the standard for discovery in federal habeas proceedings. This Court is bound to follow Supreme Court decisions "unless and until the Supreme Court itself overrules th[ose] decision[s]." *United States v. Thomas*, 242 F.3d 1028, 1035 (11th Cir. 2001); *Hohn v. United States*, 524 U.S. 236, 252–53 (1998) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality."); *cf. Daye v. U.S. Att'y Gen.*, 38 F.4th 1355, 1364 (11th Cir. 2022) (explaining that two recent Supreme Court decisions "addressed different federal statutes with different statutory phrases" and thus did not permit the court to deviate from an earlier Supreme Court decision). Thus, the Court is not limited to the state court record in deciding Barbour's actual innocence claim, and the Court did not err in allowing discovery on this basis.

The State also takes issue with the Court's discovery order because, according to the State, the Court allowed discovery on Barbour's underlying constitutional claim concerning his allegedly coerced confession without first determining whether he satisfies § 2254(d) and § 2254(e), as *Shinn* and *Shoop* purportedly require. The State made a similar argument in opposing Barbour's initial request for discovery (albeit without relying on *Shinn* or *Shoop*), which the Court rejected in its March 7, 2022 order. (Doc. 230 at 10). As

9

before, the State misunderstands what Barbour requested and why. (*Id.*).  Barbour requested, and the Court granted, discovery concerning his allegedly coerced confession to further his *Schlup* actual innocence claim, *not* to develop the record on an underlying constitutional claim. (*Id.*).  Thus, assuming without deciding that the State is correct about what *Shinn* and *Shoop* require for discovery on underlying constitutional claims, that is not the discovery the Court allowed here.  Additionally, the Court recognized, and now reiterates: "That the same evidence may also support his substantive constitutional claims does not diminish its probative value in Barbour's show[ing] of actual innocence." (*Id.*). If evidence arises demonstrating that Barbour's confession was coerced, that evidence makes it more likely that Barbour can demonstrate actual innocence under *Schlup*.  In any event, the Court's discovery order made no determination as to what evidence the Court may consider in evaluating Barbour's underlying constitutional claims in the event that Barbour overcomes any procedural bar(s).  That is a determination for a later date.  Thus, because the Court allowed discovery on Barbour's actual innocence claim and not any underlying constitutional claim, the Court finds the State's argument unavailing.

The State also contends that new information casts doubt on the reliability of certain evidence—specifically, the declaration of Lola Roberts, the victim's daughter—and thus Lola Roberts' declaration "does not support this Court's decision to conduct DNA testing or to order further discovery." (Doc. 284 at 12–13).  Regarding DNA testing, that ship has sailed:  the Court ordered DNA testing, the testing was conducted, and the issue of the

10

propriety of the Court ordering such testing is not presently before the Court.[6] Moreover, the Court did not mention Lola Roberts' declaration in its March 7, 2022 order allowing discovery. (*See* doc. 230). The Court's discovery order did mention a significant piece of evidence: DNA test results (1) indicating that semen belonging to Jerry Tyrone Jackson was on the victim and (2) excluding Barbour as the semen's source. (*Id.* at 1–2). And the State's arguments regarding the reliability *vel non* of evidence is not a basis for reconsidering the Court's discovery order. Instead, those arguments are properly raised and considered by the Court in its determination of whether Barbour has successfully demonstrated actual innocence to allow him to overcome any procedural bar(s). After all, the Supreme Court has made clear that habeas petitioners like Barbour must present "new *reliable* evidence" to make a successful showing of actual innocence, *Schlup*, 513 U.S. at 324 (emphasis added), and the district court "may consider how the timing of the [evidentiary] submission and the likely credibility of the affiants bear on the probable reliability of that evidence," *id.* at 332.

Finally, the State argues that the DNA test results referenced above do not show that Barbour is actually innocent. The States contends, based on its lay interpretation of the DNA expert's report, that the results do not actually show what the Court has said they show. For the same reasons as stated above regarding Lola Roberts' declaration, this argument is not a basis for reconsidering the Court's discovery order but instead is properly

---

[6] The State's motion to reconsider is specifically directed at the Court's March 7, 2022 discovery order. (Doc. 284 at 1). Additionally, as the State recognizes, Lola Roberts' declaration was but one piece of evidence upon which the Court relied in ordering DNA testing. (*See* doc. 168 at 12–13) (identifying, among others, four affidavits identifying new potential suspects and an alternate theory of the crime).

11

raised and considered by the Court in its determination of whether Barbour has successfully demonstrated actual innocence.

In sum, the State has not persuaded the Court that it should revisit its discovery order based on *Shinn*, *Shoop*, or any other reason the State identifies.

### III.  CONCLUSION

For the reasons stated, it is hereby

ORDERED that the Respondent's Motion to Reconsider (doc. 284) is DENIED.

Done this 18th day of August, 2022.

                          /s/ Emily C. Marks  
                        EMILY C. MARKS  
                        CHIEF UNITED STATES DISTRICT JUDGE